IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON TEXAS DIVISION

| | | |
|---|---|---|
| FEDERAL LAND BANK, ASS'N OF SOUTH ALABAMA, FLCA, | § § § | |
| Plaintiff | § § | |
| Vs. | § § | CIVIL ACTION NO. 4:07-CV-02832 |
| H & H WORLDWIDE FINANCIAL SERVICE, INC., BLACK MOUNTAIN ENERGY CORPORATION, K & T ENERGY & MINING CORPORATION, SABER MINING COMPANY, INC., MUTUAL MONEY INVESTMENTS, INC., d/b/a TRI-STAR FINANCIAL, PAUL HULSE, SR., MARIE FRANCES HULSE, PAUL HULSE, JR., FRANK TEERS, and JOHN R. CROUCH, | § § § § § § § § § § § § | |
| Defendant | § § | |

**AMENDED ORIGINAL ANSWER**
**AFFIRMATIVE DEFENSES, COUNTERCLAIMS**
**AND AMENDED THIRD PARTY COMPLAINTS OF**
**H & H WORLDWIDE FINANCIAL SERVICE, INC.,**
**BLACK  MOUNTAIN ENERGY CORPORATION, K & T ENERGY & MINING**
**CORPORATION, SABER MINING COMPANY, INC., PAUL HULSE, SR., MARIE**
**FRANCES HULSE AND PAUL HULSE, JR.**

TO THE HONORABLE JUDGE OF SAID COURT

Defendants, H & H Worldwide Financial Service, Inc., Black Mountain Energy Corporation,

K & T Energy & Mining Corporation, Saber Mining Company, Inc. Paul Hulse, Sr., Marie Frances

Hulse and Paul Hulse, Jr.'s, hereinafter collectively referred to as "the H& H defendants" files this

their Original Answer to Plaintiff's Original Complaint.

1.      The H & H defendants admit the allegations in paragraphs 12 and 13 of Plaintiffs Original

Complaint.

**2.**     The H & H defendants admit that the Plaintiff agreed to loan H & H the sum of $90 million as alleged in paragraphs 14 of Plaintiffs Original Complaint and that H & H had not paid back any principal at the time this suit was filed because it was an interest only not until the year 2011. It is further admitted that the plaintiff fraudulently obtained a court order allowing the bank to obtain possession of collateral valued in excess of $35 million.  The H & H defendants deny that the plaintiff has performed all of its obligations.

**3.**     The H & H defendants deny all the facts as alleged in paragraph 15 of Plaintiffs Original Complaint.

**4.**     The H & H defendants admit that the plaintiff fraudulently declared a default and deny all the facts as alleged in paragraph 16 of Plaintiffs Original Complaint.

**5.**     The H & H defendants admit that Crouch is an employee and officer of plaintiff and that Hulses met with Crouch and that a loan was discussed and deny all other facts as alleged in paragraph 17 of Plaintiffs Original Complaint.

**6.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraphs 18, 19 and 20 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff. The H & H defendants admit that H & H borrowed funds, purchased property, set up a mining company, began mining operations and used the loan proceeds to perform these business transactions all the express knowledge and approval of the plaintiff.

**7.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 21of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff. The H&H defendants deny that they were involved in any improper actions, deny that they

withheld any facts and deny they were involved in any way in any wrongdoing in the procurement of the loan, the loan process or the funding of the loan as alleged in paragraph 21 of Plaintiffs Original Complaint.

**8.**     The H & H defendants admit that the plaintiff made an initial loan of $30 million and those funds were disbursed and used to 5200 acres, buy government securities and commence business operations. The H & H defendants deny all other allegations in paragraph 22 of Plaintiffs Original Complaint.

**9.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 23 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff however the H & H defendants deny they were involved in any wrongdoing.

**10.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 24 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff however the H & H defendants deny they were involved in any wrongdoing.

**11.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 25 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff however the H & H defendants deny they were involved in any wrongdoing.

**12.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 26 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff however the H & H defendants deny they were involved in any wrongdoing.

**13.**     The H & H defendants deny all the facts as alleged in paragraph 27 of Plaintiffs Original Complaint.

**14.**     The H & H defendants deny all the facts as alleged in paragraph 28 of Plaintiffs Original

Complaint.

**15.**    The H & H defendants deny all the facts as alleged in paragraph 29 of Plaintiffs Original Complaint.

**16.**    The H & H defendants deny all the facts as alleged in paragraph 30 of Plaintiffs Original Complaint.

**17.**  The H & H defendants deny all the facts as alleged in paragraph 31 of Plaintiffs Original Complaint.

**18.**    The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 32 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 32 of Plaintiffs Original Complaint.

**19.**    The H & H defendants deny all the facts as alleged in paragraph 33 of Plaintiffs Original Complaint.

**20.**    The H & H defendants deny all the facts as alleged in paragraph 34 of Plaintiffs Original Complaint.

**21.**    The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 35 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 35 of Plaintiffs Original Complaint.

**22.**    The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 36 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 36 of Plaintiffs

Original Complaint.

**23.** The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 37 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 37 of Plaintiffs Original Complaint.

**24.** The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 38 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 38 of Plaintiffs Original Complaint.

**25.** The H & H defendants admit that H & H entered in a loan agreement to borrow $90 million, used $30 million of the loan proceeds to pay off the previous $30 million loan, used $7.85 million to pay for property to begin additional coal mining operations, purchased over $19.5 million of government securities and used the remaining loan proceeds to continue business operations for coal mining. The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 39 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff or what the plaintiffs beliefs were otherwise the H & H defendants deny all the facts as alleged in paragraph 39 of Plaintiffs Original Complaint.

**26.** The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 40 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 40 of Plaintiffs Original Complaint.

**27.** The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 41

of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 41 of Plaintiffs Original Complaint.

**28.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 42 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 42 of Plaintiffs Original Complaint.

**29.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 43 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 43 of Plaintiffs Original Complaint.

**30.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraph 44 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraph 44 of Plaintiffs Original Complaint.

**31.**     The H & H defendants deny the facts as alleged in paragraph 45 of Plaintiffs Original Complaint.

**32.**     The H & H defendants deny the facts as alleged in paragraph 46 of Plaintiffs Original Complaint.

**33.**     The H & H defendants deny  the facts as alleged in paragraph 47 of Plaintiffs Original Complaint however admit that monies were used to buy Government securities held as collateral for the loan and proceeds were used to make interest payments on the loan.

**34.**     The H & H defendants deny all the facts as alleged in paragraph 48 of Plaintiffs Original Complaint.

**35.**     The H & H defendants deny all the facts as alleged in paragraph 49 of Plaintiffs Original Complaint.

**36.**     The H & H defendants deny all the facts as alleged in paragraph 50 of Plaintiffs Original Complaint as they relate to the conduct of the H & H defendants.

**37.**     The H & H defendants have no knowledge of what the plaintiffs believes but deny all the facts as alleged in paragraph 51 of Plaintiffs Original Complaint.

**38.**     The H & H defendants admit that Tri-Star maintained an account in the name of the plaintiff but deny all other the facts as alleged in paragraph 52 of Plaintiffs Original Complaint.

**39.**     The H & H defendants deny all the facts as alleged in paragraph 53 of Plaintiffs Original Complaint.

**40.**     The H & H defendants deny all the facts as alleged in paragraph 54 of Plaintiffs Original Complaint.

**41.**     The H & H defendants admit that plaintiff started an action to obtain the collateral and fraudulently represented facts to the court to obtain the collateral but deny all other facts as alleged in paragraph 55 of Plaintiffs Original Complaint.

**42.**     The H & H defendants deny all the facts as alleged in paragraph 56 of Plaintiffs Original Complaint.

**43.**     The H & H defendants admit that plaintiff has a security interest in timber and on equipment used in the mining operations but deny all other facts as alleged in paragraph 57 of Plaintiffs Original Complaint.

**44.**     The H & H defendants deny all the facts and allegations as alleged in paragraphs 59, 60 and 61 of Plaintiffs Original Complaint.

**45.**     The H & H defendants deny all the facts and allegations as alleged in paragraphs 63, 64, 65, 66, 67 and 68 of Plaintiffs Original Complaint.

**46.**     The H & H defendants deny all the facts and allegations as alleged in paragraphs 70, 71, 73, 74 76, 77, 78, 79, 81, 82, 83, 84, 86, 87, and 88  of Plaintiffs Original Complaint.

**47.**     The H & H defendants are unable to admit or deny all the facts as alleged in paragraphs 90, 91, 92 and 93 of Plaintiffs Original Complaint as they have no knowledge of the internal communications of the plaintiff otherwise the H & H defendants deny all the facts as alleged in paragraphs 90, 91, 92 and 93 of Plaintiffs Original Complaint.

**48.**     The H & H defendants deny all the facts and allegations as alleged in paragraphs 95, 96 and 97 of Plaintiffs Original Complaint.

## AFFIRMATIVE DEFENSES

**49.**     The H & H defendants are  not liable to the plaintiff because of the following affirmative defenses:

      A.     Failure of consideration;

      B.     Fraud;

      C.      Illegality;

      D.     Statute of Limitations;

      E.     A superior right to act on behalf of the corporation;

      F.     Contributory Negligence;

      G.     Estoppel;

H.      Laches;

I.      Mutual Mistake;

J.      Novation; and

K.      Statute of Frauds.

**COUNTERCLAIMS OF**
**H & H WORLDWIDE FINANCIAL SERVICES, INC.,**
**BLACK  MOUNTAIN ENERGY CORPORATION,**
**K & T ENERGY & MINING CORPORATION,**
**SABER MINING COMPANY, INC.,**
**PAUL HULSE, SR., MARIE FRANCES HULSE AND PAUL HULSE, JR.**

**50.**     Now comes H & H Worldwide Financial Service, Inc., (hereinafter referred to as "H & H"),

Black Mountain Energy Corporation, (herein after referred to as "Black Mountain"), K & T Energy

& Mining Corporation (hereinafter referred to as "K& T"), Saber Mining Company, Inc.(hereinafter

referred to as "Saber"),  Paul Hulse, Sr.(hereinafter referred to as "Hulse Sr."),   Marie Frances

Hulse (hereinafter referred to as "Mrs. Hulse"),  and Paul Hulse, Jr.'s (hereinafter referred to as

"Hulse Jr.")  Defendants in the styled and numbered cause of action, and as Counter-Plaintiffs,

allege the following respective claims:

**Background Facts**

**51.**     In 2005 Counter Plaintiff H & H was attempting to acquire land for the harvesting of timber

and other mineral resources.  H & H learned of some property for sales in Kentucky which had

timber and coal on the property.  H & H wanted to purchase the land and harvest the natural

resources from the land and actively sought financing to do so.  H & H was put in contact with Mr.

Crouch with the Federal Land Bank and after several meetings agreed to loan to H & H the sum of

$30 million to purchase land and the necessary equipment and provide funds for operations in part

based on appraisal on the property.  Shortly after the first property was acquired H & H learned of

Page 9 of  25

another opportunity to purchase additional land and sought additional funding from the Counter

Defendant. The Counter Defendant agreed to the additional funding and opened a $90 million line

of credit which was used to pay off the original $30 million loan, to buy additional land, equipment

and begin business operations. H & H is the obligor on the $90 million note. Black Mountain and

K & T executed an "Acknowledgment and Agreement" designating those entities as

accommodation mortgagors securing real property purchased with the loan proceeds. H & H, Black

Mountain and K & T also signed the revolving line of credit for the $90 million loan. Black

Mountain and K & T also each signed mortgages for the benefit of the counter defendant on the

respective properties purchased with the loan proceeds. Saber, Hulse Sr., Mrs. Hulse nor Hulse Jr.

have signed or executed any documents with the counter defendant in their respective individual

capacities.

52.    H & H, Black Mountain, K & T and Saber were involved in the ownership and/or operations

for the removal of timber and the extraction of minerals from the properties. The coal mining

operations were progressing significantly and was estimated to produce a million tons of coal with

resulting revenues of $50 million. The counter defendant, by and through its agents and syndicators,

shut down the operations, told employees at the mining operations that the Hulses were in jail for

bank fraud and interfered with the business operations. The actions of the counter defendant, and

the unknown syndicators,  was calculated to and did cause damage to the counter plaintiffs.

**First Cause of Action**
**H & H, Black Mountain and K & T**
**Breach of Contract**

53.    Counter Defendant Land Bank, acting on its own behalf, as well as on behalf of each

and every participant, breached its contract with the Counter-Plaintiff by; i) refusing to accept the

interest payment from the interest earned by the bonds in place; ii) obtaining appraisals in violation of the contracts in place, obtaining appraisals in violation of the laws of Kentucky regarding the appraising of mineral interests, and controlling the manner and method in which the appraisals were performed in order to achieve the desired result of reducing the value of the secured property to create a fictitious default; iii) refusing to allow further draws against the line of credit and refusing to advance funds up to the amount authorized by the line of credit; iv) wrongfully declaring a default of the promissory note and failing to properly notify the parties to the agreements; v) wrongfully foreclosing on the bonds held as security and then selling these bonds at a below market discount value; vi) wrongfully obtaining a temporary restraining orders in State Court proceedings in Texas and in Kentucky through false affidavits; and vii) wrongfully seeking foreclosure proceeding on the real property and personal property.  These actions have caused the Counter-Plaintiff substantial, irreparable damages, foreseeable and foreseen by the Land Bank in an amount in excess of $20,000,000.00.

### Second Cause of Action
### H & H, Black Mountain, K & T and Saber
### Conspiracy & Tortuous Interference

**54.**     Upon information and belief, the Counter Defendant and it participants, the identity of whom is unknown at this time, participated in a scheme to cause the business venture to fail.  The Counter Defendant and its syndicators, the identity of whom is unknown at this time, trespassed onto the property and communicated with the employees working at the mine causing them to leave and destroy property owned by the Counter Plaintiff.  The Counter Defendant and its syndicators conspired  to tortuously interfere with the business operations of the Counter Plaintiffs and did in fact cause the business operations to suffer losses.

### Third Cause of Action
### H & H, Black Mountain and K & T
### Fraud and Misrepresentation

**55.**     The Counter Defendant defrauded the Counter Plaintiffs by structuring a loan that was, in reality, at least according to written terms, not all what it was represented to be.  Such fraudulent misrepresentations go to the very essence of the transaction, including, without limitation but by way of example: the nature of the business to be established; the payment for the bonds that were used to enhance cash flow; the fact that the bonds themselves, and not just the income from the bonds, was to be collateral and the fact, if it is a fact, that not income from the bonds but only interest, was to be used for the initial payments. These misrepresentations caused the Counter Plaintiffs to enter into the agreements causing the Counter Plaintiffs damage.

### Fourth Cause of Action
### H & H, Black Mountain and K & T
### Loan Documents Are Incomplete and Unenforceable

**56.**     The $90,000.00 Promissory note dated December 14, 2005, was an incomplete instrument when executed and, as such, does not constitute or represent a legally enforceable obligation. The mortgage documents for, respectively, east Kentucky (Harlan & Bell Counties) and West Kentucky (Muhlenburg County) contained blank Exhibit A's (which were supposed to have contained the property descriptions) when executed and, as such, do not constitute or represent legally enforceable mortgage obligations. Inasmuch as the underlying promissory note does not constitute or represent a legally enforceable obligation the mortgage instruments purportedly securing said note are invalid and unenforceable.

**Fifth Cause of Action**
**Paul Hulse, Sr., Marie Frances Hulse, Paul Hulse, Jr.**
**Loss of Value of Corporate Stock**

**57.**     The wrongful and egregious actions of the Counter Defendant, and its co-conspirators, have

caused the Counter Plaintiffs' stock ownership in the respective corporations to be diminished if not

a complete loss, and years of work and effort to have been in vain.  Counter Plaintiffs therefore seek

recovery for the loss in value of the business enterprise and the stock ownership from the Counter

Defendant and its unnamed co-conspirators.

**Sixth Cause of Action**
**Paul Hulse, Sr., Marie Frances Hulse, Paul Hulse, Jr.**
**Libel and/or Slander**

**58.**     Upon information and belief the Counter Defendant, its agents and co-conspirators,

trespassed onto the property owned by the businesses and stated to the employees of the businesses

that the Hulses' individually had committed bank fraud and were currently in jail causing the

employees to walk off the job.  The statements made against the Hulses' individually were false

when made and constitute slander per se.  The wrongful and egregious actions of the Counter

Defendant and its agents and co-conspirators caused damage to the Counter Plaintiffs.

**Third Party Complaint**
**of H & H Worldwide Financial Services, Inc.,**
**Black  Mountain Energy Corporation,**
**K & T Energy & Mining Corporation Against**
**Woods Realty Service, George K. Cox & Associates, Inc. and**
**Herbert Pritchett & Associates, Inc.**

**59.**     a.  Third Party Defendant Woods Realty Service has entered an appearance in this matter.

b.  Third Party Defendant George K. Cox & Associates, Inc. has entered an appearance in

this matter.

c.  Third Party Defendant Pritchett & Associates, Inc. has entered an appearance in this

matter. These third party defendants are collectively referred to as the "Appraisal Third Party Defendants".

60.     The Plaintiff/Counter Defendant hired the Appraisal Third Party Defendants to provide appraisals on the property made the subject of this lawsuit.  The appraisals were performed at the direction and control of the Plaintiff/Counter Defendant and were provided to the Defendant/Counter Plaintiffs/Third Party Plaintiff to rely upon and use in the process of drawing down on the line of credit and provided to the Defendant/Counter Plaintiffs/Third Party Plaintiffs  to rely upon in entering into the financial relationship with the Plaintiff/Counter Defendant verifying the value of the assets to borrow the sums referenced.  The appraisals relied upon by the Defendants/Counter Plaintiff/Third Party Plaintiffs showed the value of the land to be substantial and worth the investment and exposure on the note and loan documents.  Subsequently, the Plaintiff/Counter Defendant obtained appraisal drastically altering the value of the property in question.

61.     The Appraisal Third Party Defendants, either one or more, negligently prepared the appraisals given to the Third Party Plaintiffs to be relied upon in entering into the financial arrangement and/or being relied upon by the bank in claiming default on the various loan documents.  The negligence of one or more of the Appraisal Third Party Defendants is the producing cause of damages to the defendants/counter plaintiffs/third party plaintiffs for which they seek damages as allowed by law in an amount not less than $20,000,000.00.

### THIRD PARTY PLAINTIFFS H&H WORLDWIDE FINANCIAL SERVICES, INC., BLACK MOUNTAIN ENERGY CORPORATION, K&T ENERGY & MINING CORPORATION, SABER MINING COMPANY, INC.S, PAUL HULSE, SR., MARIE FRANCES HULSE and PAUL HULSE, JR.'s THIRD PARTY COMPLAINT AGAINST PARTICIPATION/SYNDICATION BANKS

62.     a.      Third Party Defendant **Federal Land Bank Assoc. of North Alabama**, FLCA is a

Page 14 of  25

lending institution and may be served with process by certified mail to its President/CEO, David A. Howse, P.O. Box 740450, Tuscumbia, AL 35764.

b.      Third Party Defendant **Texas Land Bank** is a lending institution and may be served with process by certified mail to its President, Charles P. Gant, P.O. Box 20997 13525 Sandalwood Drive, Waco, Texas 76702.

c.      Third Party Defendant **Land Bank of North Mississippi** is a lending institution and may be served with process by certified mail to its President & CEO, Gary L. Gaines, P.O. Box 667, Senatobia, MS 38668.

d.      Third Party Defendant **Land Bank South** is a lending institution and may be served with process by certified mail to its Vice-President, Herb Haynes, P.O. Box 321474 Flowood, Mississippi 39232-14674.

e.      Third Party Defendant **Capital Farm Credit** is a lending institution and may be served with process by certified mail to its CEO, Ben R. Novasad, 507 East 26th Street, Bryan, Texas 77803.

f.      Third Party Defendant **Panhandle-Plains Land Bank** is a lending institution and may be served with process by certified mail to its President, Robert R. William, P.O. Box 7785, Amarillo, Texas 79114.

g.      Third Party Defendant **Louisiana Federal Land Bank, Assoc.** is a lending institution and may be served with process by certified mail to its President, Michael Wright, P.O. Box 518, 5587 Front Street, Winnsboro, LO 71295.

h.      Third Party Defendant **Legacy Ag Credit** is a lending institution and may be served with process by certified mail to its President, Lee E. Warren, P.O. Box 468, 303

Connally Street, Sulphur Springs, Texas 75483

i.      Third Party Defendant **Central Texas Farm Credit** is a lending institution and may be served with process by certified mail to its President, James R. Isenhower, P.O. Box 511, 215 West Elm Street, Coleman, Texas 76834.

j.      Third Party Defendant **AG New Mexico Farm Credit Services** is a lending institution and may be served with process by certified mail to its President/CEO, Bill Yoakum, 19554 Highway 314, Belen, N.M. 87002.

k.      Third Party Defendant **AgStar Financial Services** is a lending institution and may be served with process by certified mail to its President/CEO, Paul A. DeBriyn, 1921 Premier Drive, P.O. Box 4249, Mankato, MN 56002.

l.      Third Party Defendant **Farm Credit of South Florida** is a lending institution and may be served with process by certified mail to its President/ CEO, Don Rice, P.O. Box 213069, 11903 Southern Blvd., Suite 200, Royal Palm Beach, FL 33421.

m.      Third Party Defendant **AgCredit of South Texas** is a lending institution and may be served with process by certified mail to its CEO, Larry A. Wade, 555 S. International Blvd., Weslaco, Texas 78596.

n.      Third Party Defendant **Farm Credit Bank of Texas** is a lending institution and may be served with process by certified mail to its CEO, Larry R. Doyle, P.O. Box 202590, 4801 Plaza on the Lake Drive, Austin, Texas 78720.

o.      Third Party Defendant **AgriBank** is a lending institution and may be served with process by certified mail to its CEO, Bill York, 375 Jackson Street, St. Paul, MN 55101.

p.      Third Party Defendant **AgFirst Farm Credit Bank** is a lending institution and may be served with process by certified mail to its CEO, F.A. Lowrey, P.O. Box 1499, Columbia, South Carolina 29202.

q.      Third Party Defendant **Capital Markets of the South**, is a joint venture and may be served with certified mail by serving the plaintiff, a member of the joint venture/partnership, by serving its attorney of record David Bryant, 1201 Elm Street, Suite 3300, Dallas Texas 75270.

These Third Party Defendants are referred to collectively as "Lending Third Party Defendants", syndicators, participants, principals, joint venturers and/or partners.

## JURISDICTION AND VENUE

63.     This Court has jurisdiction of this action under 28 U.S.C. § 1331 in that this is a civil action arising under the laws of the United States of America, including 15 U.S.C. § 78aa and 18 U.S.C. § 1964. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over this Third-Party Complaint as all claims alleged herein that arise under state law are so related as to form part of the same case or controversy.

64.     Venue of this action in this Court is proper under 28 U.S.C. § 1391(b) in that some of the Third-Party Defendant may be found in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS RELATING TO THIS THIRD PARTY CLAIM

65.     In summer of 2005 the Federal Land Bank Association of South Alabama (plaintiff) and some, if not all, of the lending third party defendants agreed to loan H & H Worldwide Financial Service, Inc., ("H&H") the amount of $30 million to acquire land in Kentucky and begin coal

mining operations.  Subsequently in December 2005, the plaintiff and some, if not all, of the lending third party defendants agreed to loan to H&H the principal amount of up to $90 million (the "Loan").  The plaintiff on or about December 14, 2005 consummated this Loan and advanced to H&H $68.5 million of that amount.  The Loan is evidenced in part by an Amended and Restated Promissory Note (the "Note"), which the plaintiff has represented to this Court it is the owner and holder, and an Amended and Restated Revolving Line of Credit Agreement (the "Credit Agreement" and together with the Note and other documents evidencing and relating to the Loan, the "Loan Documents.") The loan proceeds of the Amended Note were used to pay off the original $30 million loan and to acquire additional land and businesses to begin and continue coal mining operations.

66.     Unknown to H & H at the time of the making of the loan, the plaintiff had agreements in place with the lending third party defendants to fund the loans.  The exact terms of the agreements are unknown to the third party plaintiffs at this time.  The plaintiff has asserted that the third party plaintiffs engaged in conduct which fraudulently induced the lending third party defendants to purchase parts of the loan to H & H. Contrary to the representation that the plaintiff is the owner of the loan, at the time this suit was filed the plaintiff owned only 5.56% of the loan.  Additionally unknown at the time the plaintiff and its officers were not only acting in the capacity of officers of the plaintiff but also as officers of a joint venture known as Capital Markets of the South, a joint venture between at least plaintiff, Federal Land Bank Assoc. of North Alabama, Land Bank of North Mississippi, Land Bank South and Louisiana Federal Land Bank, Assoc. It is unknown at this time if there are more entities involved known as Capital Markets which were involved in the loan.  The third party plaintiffs are third party beneficiaries of the syndication/participation agreements as the plaintiff is incapable of funding the loan without the agreements.

67.     In March 2006, the plaintiff, its joint venturers and the lending third party defendants refused to comply with the terms of the credit agreement and advance funds under the line of credit. This refusal constitutes a breach of the credit agreement.  The plaintiff and its joint venture/syndication participants refused to comply with the credit agreement even though the loan was not in default and that the plaintiff represented that H & H was in good standing and completing improvements on the properties for coal mining operation.  From March 2006 until July 2, 2007 no conditions in the loan changed and plaintiff and its participants/syndicators received interest payments as agreed even though plaintiff and its participants/syndicators were violating the terms of the credit agreement. On or about July 2, 2007 the plaintiff and the lending third party defendants wrongfully declared the loan to be in default and began foreclosure proceedings attaching and removing assets from the use and possession of H & H Worldwide Financial Service, Inc., Black Mountain Energy Corporation, K & T Energy & Mining Corporation, Saber Mining Company, Inc.  The plaintiff and the third party defendants conspired to deprive the third party plaintiffs of their rights under the credit agreements and the assets and operations of the business and acquire for themselves the valuable coal reserves on the properties.

68.     On September 5, 2007, the plaintiff filed this action alleging Federal Securities Law violations, Federal Civil RICO  violations, breach of credit agreements, breach of pledge agreements, fraud and misrepresentation, civil conspiracy, breach of fiduciary duty, and conversion and misappropriation of bank funds and collateral.  The plaintiff seeks damages in excess of $45 million and related attorney fees. The plaintiff's allegations of fraud relate not only to the plaintiff but also to the plaintiff's co-conspirators, partners, participant/syndicators and joint venturers (lending third party defendants).

**69.**    Upon information and belief the co-conspirators were in violation of the regulations of the Federal Land Bank in forming the joint venture and making loans for coal mining operations and for making loans outside the territories awarded them.  This violation caused the joint venture to be dissolved in the second quarter of 2007 contemporaneous with the decision by the plaintiff and its co-conspirators to declare the third party plaintiff in default.  Additionally the plaintiff and the lending third party defendants own shares in each other and pay each other patronage from this member owned venture.  The relationship and activities by and between the plaintiff and the lending third party defendants creates joint and several liability through: i) a syndication relationship; ii) a joint venture relationship; iii) an agency/principal relationship and/or iv) through the wrongful actions of co-conspirators.

**70.**    The Third Party Plaintiffs  incorporates by reference as if set out verbatim all previous allegations of their counterclaims against the plaintiff.

**FIRST CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION/FRAUD**

**71.**    The plaintiff represented that it was legally qualified and competent to make the loan.  It further represented that it would comply with the terms of the credit agreements.  Additionally the plaintiff represented that the third party plaintiffs could use the loan proceeds in any manner it wished to pursue its business opportunities.  The plaintiff made these representations for and on behalf of all the syndicator/participant lending third party defendants as the agent for those lending third party defendants.

**72.**    The lending third party defendants knew or should have known that the plaintiff was making these representations to the third party plaintiffs and intended for the third party plaintiffs to rely upon these representations as to the condition of the documents provided and, upon that reliance,

to execute the loan documents and become obligated on the loan only to have the business enterprise virtually shut down as a proximate result of that reliance.

**73.**     The lending third party defendants are jointly and severally liable for any damages the third party plaintiffs have suffered and may suffer as a result of their agent/partner, plaintiff's misrepresentations.

**SECOND CASE OF ACTION**
**CIVIL CONSPIRACY TO COMMIT FRAUD**

**74.**     Plaintiff, along with other lending third party defendants conspired to defraud and make misrepresentations to and to conceal the truth from the third party plaintiffs for as long as possible.

**75.**     Plaintiff and these other lending third party defendants engaged in one of more overt acts in furtherance of such conspiracy.  Such acts include, but are not limited to, failures and refusals to advance funds under the credit agreement, representing that plaintiff was providing the money for the loan when if fact it was not, representing that the plaintiff was the lender and administering the loan when it fact it was not, representing that it did not authorize third party plaintiffs to purchase bonds when in fact it had, representing that it was the owner of the loan when in fact it was not and representing that there was insufficient interest in the bond account to pay the interest when in fact there was.

**76.**     Such conspiracy and such acts in furtherance of such conspiracy have proximately caused damages to the third party plaintiffs in amounts far in excess of $100,000,000.00 for which the lending third party defendants are  jointly and severally liable with the plaintiff.  The third party plaintiffs are therefore entitled to recover from lending third party defendants and the plaintiff all such actual damages.

**77.**     The third party plaintiffs are  further entitled to recover from plaintiff and all such lending

third party defendants participating in the conspiracy exemplary damages in an amount in excess of one million dollars each, because their acts of conspiracy were undertaken intentionally and with malice, and/or with that state of mind for which the law permits imposition of such damages.

**THIRD CAUSE OF ACTION**
**FRAUDULENT INDUCEMENT**

78.    Plaintiff and the lending third party defendants knew at the time the statements were made that they were false, or in the alternative, were made recklessly without knowledge as to their truth. Plaintiff and the lending third party defendants intended the third party plaintiffs to rely on these representations and made them for the purpose of inducing the third party plaintiffs to enter into the loan and invest in the coal mining business enterprise.

79.    Plaintiff and the lending third party defendants made these representations to the third party plaintiffs before  the closing of the Loan.  These representations were material because the third party plaintiffs would not have entered into the loan commitment had the third party plaintiffs known the truth.  The third party plaintiffs  relied to its detriment on plaintiff and the lending third party defendants' representations and was damaged as a result.

**FOURTH CAUSE OF ACTION**
**CONSPIRACY & TORTUOUS INTERFERENCE**

80.    Upon information and belief, the plaintiff and the lending third party defendants, participated in a scheme to cause the business venture to fail.  The plaintiff as representative for the lending third party defendants trespassed onto the property and communicated with the employees working at the mine causing them to leave and destroy property owned by the third party plaintiffs.  The plaintiff and the lending third party defendants conspired  to tortuously interfere with the business operations of the third party plaintiffs and did in fact cause the business operations to suffer losses.

Page 22 of  25

## FIFTH CAUSE OF ACTION
## LOAN DOCUMENTS ARE AMBIGUOUS, INCOMPLETE AND UNENFORCEABLE

**81.**    The $90,000.00 Promissory note dated December 14, 2005, was an incomplete instrument

when executed and, as such, does not constitute or represent a legally enforceable obligation. The

mortgage documents for, respectively, east Kentucky (Harlan & Bell Counties) and West Kentucky

(Muhlenburg County) contained blank Exhibit A's (which were supposed to have contained the

property descriptions) when executed and, as such, do not constitute or represent legally enforceable

mortgage obligations. Inasmuch as the underlying promissory note does not constitute or represent

a legally enforceable obligation the mortgage instruments purportedly securing said note are invalid

and unenforceable.

## SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

**82.**    Plaintiff, acting on its own behalf, as well as on behalf of each and every third party

defendant entered into an agreement to loan up to $90 million. Plaintiff, acting on its own behalf,

as well as on behalf of each and every lending third party defendants , breached its contract with the

third party plaintiffs by; i) refusing to accept the interest payment from the interest earned by the

bonds in place; ii) obtaining appraisals in violation of the contracts in place, obtaining appraisals in

violation of the laws of Kentucky regarding the appraising of mineral interests, and controlling the

manner and method in which the appraisals were performed in order to achieve the desired result

of reducing the value of the secured property to create a fictitious default; iii) refusing to allow

further draws against the line of credit and refusing to advance funds up to the amount authorized

by the line of credit; iv) wrongfully declaring a default of the promissory note and failing to properly

notify the parties to the agreements; v) wrongfully foreclosing on the bonds held as security and then

selling these bonds at a below market discount value; vi) wrongfully obtaining a temporary restraining orders in State Court proceedings in Texas and in Kentucky through false affidavits; and vii) wrongfully seeking foreclosure proceeding on the real property and personal property. These actions have caused the third party plaintiffs substantial, irreparable damages, foreseeable and foreseen by the plaintiff and lending third party defendants in an amount in excess of $100,000,000.00.

## Damages

**83.**    The wrongful actions of the plaintiff/counter defendant, the lending third party defendants and the appraisal third party defendants have injured the defendants/counter-plaintiff/third party plaintiffs in an amount in excess of $100,000,000.00 for which they seek recovery together with interest, both prejudgment and post judgment, costs of court and attorneys fees as allowed by law.

## Exemplary of Punitive Damages

**84.**    Due to the especially egregious nature of the plaintiff/counter-defendant, appraisal third party defendants and the lending third party defendants' conduct, defendants/counter-plaintiff/third party plaintiffs seeks exemplary, or punitive, damages not only to punish plaintiff/counter-defendant, appraisal third party defendants and the lending third party defendants' conduct but also to discourage others who might be tempted to act in a similar fashion. Such exemplary, or punitive, damages should be, it is suggested, in at least three (3) times the amount of the actual damages shown.

WHEREFORE, PREMISES CONSIDERED, Defendants, Counter-Plaintiffs and Third Party Plaintiffs prays that Plaintiff take nothing by their suit, that Defendants, Counter-Plaintiff and Third Party Plaintiffs be granted all the requested relief without delay and for such other and further relief,

both general and special, at law and in equity, to which Defendants, Counter-Plaintiff and Third

Party Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

NORMAN & POWELL

By:_____/S/_____
WILLIAM T. POWELL
Federal Bar No. 2986
MICHAEL H. NORMAN
Federal Bar No. 2973
952 Echo Lane, Suite 410
Houston, Texas  77024
Telephone: (713) 722-9233
Facsimile:  (713) 722-9433

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent to all known counsel of record, on this the 7th day of February, 2008 via Court's electronic filing system

_____/S/_____
WILLIAM T. POWELL